KRUGEN, *Respondent, v.* BEALL PIPE AND
TANK CORPORATION (No. 401-569), *Appellant.*
529 P2d 962

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant. With him on the brief were Robert E. Joseph, Jr., Michael D. Hoffman, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Donald S. Richardson,* Portland, argued the cause for respondent. With him on the brief were Richardson & Murphy, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Claimant, then 61, suffered a compensable low back injury when he lifted a metal beam and twisted his back while employed by Beall Pipe & Tank Corp., July 18, 1969. He had worked steadily for the 35 years preceding the injury, but at the time of the hearing had not worked since the injury. By Determination Order of November 6, 1970, the Closing & Evaluation Division of the Workmen's Compensation Board found him to be permanently totally disabled. Thereafter employer-insurance carrier requested a hearing[1] and

---

[1] Concerning the lapse of time between the original award of permanent total disability of November 6, 1970, and the hearings of May and June 1973, the hearing officer stated:

"Defendant [employer-insurance carrier] requested a hear-

after a hearing the hearing officer, on July 27, 1973, and in turn the Workmen's Compensation Board on March 5, 1974, and the circuit court on July 10, 1974, all found claimant to be permanently totally disabled.

Employer-insurance carrier contends that claimant does not suffer permanent total disability; that there was evidence, including surveillance films, that he is capable of performing work, and there are jobs in the metropolitan area of Portland within his capacity. The carrier also contends that claimant lacks motivation, having intended to retire at age 62 anyway. In that connection the carrier contends that an award of permanent total disability contemplates payment only until the date of the contemplated retirement of the employe, but in any event not beyond the common retirement age of 65.

■ This latter contention we determine against appellant-carrier. There is nothing in the statute which limits the payment of permanent total disability benefits to anything less than the period of disability. The statute reads in pertinent part:

> "When permanent total disability results from the injury, the workman shall receive during the period of that disability compensation benefits * * *." ORS 656.206 (3).

We note that the law has been construed from its inception nearly 60 years ago to apply to the period of disability regardless of claimant's age and not as ceasing upon the reaching of retirement age by a claimant.

---

ing 11 months after this Determination Order, and thereafter repeatedly requested postponements of hearing dates so that the hearing took place some two and a half years after the Determination Order."

As the trial judge observed, any change in this regard would be a legislative matter.

■ In our de novo review of the record, we arrive at the same conclusion as the Closing & Evaluation Division, the hearing officer, the Workmen's Compensation Board, and the circuit court. We adopt the following from the opinion of the circuit court.

"This claimant is now 65 years of age and will be 66 in November, 1974. He injured his low back on July 18, 1969 when he lifted a metal beam at Beall Pipe and Tank Corporation. His injury is basically a sprain superimposed on a spondylolisthesis with nerve root impingement. He has not worked at gainful employment since his injury.

"The medical evidence and the record reveal, with little question, that this man is permanently and totally disabled within the definition of the Workmen's Compensation Act.

"ORS 656.206 defines permanent total disability as follows:

" '(1) (a) Permanent total disability means . . . condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation.'

"* * * * * "

With reference to the employer's contention that the evidence indicated claimant was capable of performing work, the trial court said:

"This Court has now viewed the three films of the claimant taken sub-rosa. Discounting the fast motion due to camera problems, the films reveal the workman can do those things most retired men can do—that is, putter around camper equipment, clam dig, etc. They do not tell the Court what pain the claimant endures, nor do they reveal that he can return to the labor market to engage regularly in a suitable occupation."

■ With reference to employer's claim of lack of motivation, we adopt the following from the Order on Review of the Workmen's Compensation Board:

"*  *  *  *  *

"The employer attempted to show that claimant retained at least a minimal residual earning capacity and that, this being so, the claimant had a positive duty to attempt to return to work.

"The employer then pointed to the lack of such efforts and argued, relying on *Deaton v. SAIF*, *  *  * [13 Or App 298, 509 P2d 1215] (1973) that the claimant's lack of motivation precluded the granting of an award of permanent total disability.

"The evidence establishes that claimant's physical impairments are substantial. Even disregarding the claimant's age it is questionable that any employer with knowledge of his limitations would hire him for any kind of work and, with respect to the concept of earning capacity, the total inability to *gain* employment is just as totally disabling as the inability to *hold* employment.

"In its attack on claimant's motivation the employer has ignored the natural effect of the 1970 permanent total disability ruling and ascribes the lack of effort to claimant's early retirement decision. We disagree.

"*  *  *  *  *"

Affirmed.