700 P.2d 504

**ARIZONA PUBLIC SERVICE COMPANY, Petitioner-Employer/Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Benjamin E. Casner, Respondent-Employee.**

**No. 1 CA–IC 3172.**

Court of Appeals of Arizona, Division 1, Department B.

May 9, 1985.

---

John S. Schaper, Phoenix, for petitioner-employer/carrier.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Ely, Bettini & Ulman by J. Wayne Turley, Phoenix, for respondent-employee.

## OPINION

FROEB, Judge.

This special action review of an Industrial Commission award concerns the effect of voluntary retirement on the award of benefits for temporary partial disability. We affirm the award.

The respondent-employee (claimant) hurt his back at work in 1965. This claim was closed with a ten percent permanent impairment, but no disability. He subsequently hurt his right knee at work in 1976. This claim was also closed with a ten percent permanent impairment, but no disability.

Although the claimant continued to work as a heavy duty mechanic for petitioner-employer (APS), his combined impairments caused considerable difficulty. In addition, the right knee condition progressively worsened. In September of 1982, his orthopedic surgeon recommended a reopening and referred the claimant to a knee specialist, who diagnosed a torn medial meniscus and arthritis. The claimant then petitioned to reopen on September 17, 1982. While the petition to reopen was pending, claimant applied for retirement under an early retirement plan put into effect by APS. This plan, which APS actively encouraged, provided a $500.00 monthly bonus for early retirement. Eligibility depended solely on seniority and a minimum age of fifty-five and had nothing to do with disability. Early retirees were disqualified from further employment with APS, but could work for any other employer.

The reopening petition was accepted by APS on November 16, 1982. Claimant underwent surgery six days later. A subsequent notice of claim status provided temporary total disability benefits beginning the date of surgery.

While the claimant was drawing temporary total disability benefits, APS approved his pending request for early retirement, which took effect January 1, 1983.

On January 17, 1983, the claimant was released to light work status. Effective this date, the claimant's disability status was changed from temporary total to temporary partial, but further benefits were not paid. The claimant timely protested and claimed additional temporary compensation.

Pending the hearings on this protest, a notice was issued terminating claimant's

temporary status with permanent impairment. The current award does not concern this notice.

At the hearings, claimant confirmed the preceding history and described the pain and weakness now affecting his knee. He contended he was unable to do his prior work, but nevertheless looked for light work as a mechanic which he was unable to find.

Claimant's doctors agreed that he had an additional knee impairment, but disagreed about the extent of it. One believed that the claimant could do his prior work. In contrast, another doctor, who considered the preexisting back impairment and the history of work difficulties before surgery, opined that the claimant could do light work only.

A labor relations supervisor for APS testified that APS had suitable light work for the claimant and that, if he had not retired, APS would have been contractually obligated to provide this alternative employment by reason of a collective bargaining agreement. He also testified that this employment would have paid at least as much as the claimant's average monthly wage. The significance of this evidence is tied to the issue of claimant's voluntary retirement. APS takes the position that claimant is not entitled to temporary partial benefits because if he had not retired he could have continued to do light work for APS at the same rate of pay he previously received for his regular work.

The administrative law judge thereafter issued the December 30, 1983, award in which he found that the claimant had not forfeited his right to temporary compensation by voluntarily retiring and was therefore entitled to "cash compensation." After administrative review, this special action followed.

■ First, we consider whether or not voluntary retirement works a forfeiture of an employee's right to temporary disability benefits. We hold it does not.

■ Although we have not been referred to any precedent involving temporary benefits, we have held that permanent benefits are not lost or reduced because of retirement. *Franco v. Industrial Commission,* 130 Ariz. 37, 633 P.2d 446 (App.1981) (voluntary retirement does not furnish a basis for reduction of benefits on petition for rearrangement under A.R.S. § 23–1044(F)(3)). Other courts have reached a similar conclusion. *See Van Voorhis v. Workmen's Compensation Appeals Board,* 37 Cal.App.3d 81, 112 Cal.Rptr. 208 (1974); *O'Connell v. New York State Workmen's Compensation Board,* 14 A.D.2d 945, 221 N.Y.S.2d 491 (1961). The basic right to permanent and temporary disability benefits is determined by an identical standard, i.e., proof of lost earning capacity, *Western Cable v. Industrial Commission,* 698 P.2d 759 (Ariz.App.1985). Accordingly, we hold the effect of retirement on temporary benefits is the same as it is on permanent benefits.

If benefits are not lost by reason of voluntary retirement, are they nevertheless lost because claimant, by retiring, gave up the possibility of light work for APS at full pay under the collective bargaining agreement?

■ We hold the labor agreement does not operate in this situation to disallow benefits to claimant. APS encouraged voluntary early retirement, the inevitable effect of which, if accepted, was to preclude further employment of claimant by APS. By offering retirement, which claimant had the right to accept, APS cannot rely upon the full paying job it would have provided for claimant had he not retired. The retirement, therefore, cannot serve as an argument that claimant limited the available job market or voluntarily quit. The claim for cash compensation for lost earning capacity during the period of temporary partial disability is not thereby lost.

APS relies on *Bryant v. Industrial Commission,* 21 Ariz.App. 356, 519 P.2d 209 (1974). *Bryant* dealt with a petition to rearrange permanent disability benefits. In upholding a denial of the petition, this court held, *inter alia,* that when a claim-

ant's voluntary actions, as opposed to his injuries, are the predominant cause of his changed economic status, he will not be entitled to additional benefits.

In *Bryant,* the claimant voluntarily terminated a job in Tucson which compensated him at a rate equal to or better than his pre-injury earnings. His purpose was to take a better job in Colorado, but it turned out the job did not last more than a few days. Claimant then returned to Tucson, but could not regain his former job or any other work paying his former wage. His petition for rearrangement was denied because he was unable to prove his reduced earning capacity was a result of his industrial injury. The court of appeals held that where the predominant cause of an injured worker's changed economic status is of his own making through voluntary choice, benefits would be denied.

We hold that *Bryant* is distinguishable from the present case because retirement is not the same as a voluntary quit. Claimant in the present case was entitled to retire under the program offered by APS and, in doing so, did not lessen his right to benefits based upon lost earning capacity.

In conclusion, we affirm the award of the Industrial Commission allowing temporary benefits from September 17, 1982, through May 27, 1983. The claimant has requested an award of attorney's fees for a frivolous appeal. We do not find that the appeal is frivolous and therefore deny this request.

The award is affirmed.

KLEINSCHMIDT and GREER, JJ., concur.