William **BAILEY, Jr.,** Petitioner,

v.

**LITWIN CORPORATION and Travelers Insurance Company,** Respondents.

No. S–2757.

Supreme Court of Alaska.

Sept. 29, 1989.

**11.** We have considered the other arguments raised on appeal and conclude that they are without merit.

Chancy Croft, Anchorage, for petitioner.

James F. Klasen, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for respondents.

Elise Rose and Mark L. Figura, Anchorage, for amici curiae Alaska Nat. Ins. Co. and Industrial Indem. Co. of Alaska.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is a petition for review from decisions of the Alaska Workers' Compensation Board (Board) following remand after our decision in *Bailey v. Litwin Corporation*, 713 P.2d 249 (Alaska 1986). Two issues are presented. The first is whether the Board erred in calculating a lump sum award for permanent partial disability based on the employee's life expectancy, without reduction for the employee's probable future retirement. The second issue is whether the Board abused its discretion by awarding the employee inadequate attorney's fees.

### Facts and Proceedings

William Bailey, Jr., the petitioner, is a 54–year–old pipefitter. In 1980, he sustained a work-related back injury, while working for Litwin Corporation, the respondent.[1] *Bailey*, 713 P.2d at 250. Litwin's workers' compensation carrier was Travelers Insurance Company. *Id.* at 251. Travelers paid Bailey temporary total disability benefits for eight months, and a $6,000 lump sum payment for permanent partial disability based on a ten percent loss of earning capacity. *Id.*

In 1982, Bailey filed a petition for adjustment of claim with the Board. *Id.* The Board ruled that Litwin and Travelers had properly terminated Bailey's temporary total disability benefits after eight months and that Bailey was not entitled to a lump sum award exceeding $6,000. *Id.* Additionally, the Board denied Bailey's claim for attorney's fees and costs. *Id.* at 251–52. The superior court affirmed the Board's decision. Bailey appealed.

On appeal, we reversed the Board's calculation of the lump sum award.[2] *Id.* at

---

1. The statement of the case is taken largely from *Bailey*, 713 P.2d at 251–52.

2. The Board calculated the lump sum award by multiplying Bailey's ten percent loss of earning capacity by $60,000, the total compensation payable for permanent partial disability resulting from an unscheduled injury, former AS 23.30.-190(b). *Id.* at 256.

257–58. We held that, in keeping with the policies of the Workers' Compensation Act and legislative intent to assure employers that their liability for unscheduled injuries would never exceed $60,000, it would be arbitrary and unfair to calculate the lump sum award by multiplying the maximum amount recoverable by the percentage of impairment. *Id.* We stated:

> Under *Absher [v. State, Department of Highways,* 500 P.2d 1004 (Alaska 1972)]*, the Board acted reasonably in basing Bailey's lump sum award on the relationship between impaired earning capacity and the statutory maximum for unscheduled injuries. *Providence Washington [Insurance Company v. Grant,* 693 P.2d 872 (Alaska 1985)]*, however, forbids the identical method for scheduled injuries. The same reasons that lead us to overrule *Cesar [v. Alaska Workmen's Compensation Board,* 383 P.2d 805 (Alaska 1963)]* in the area of scheduled injuries compel us to overrule *Absher* in the case of unscheduled injuries.

*Id.* at 257.

We remanded the case and directed the Board to first determine whether it was in the interest of justice that a lump sum be awarded rather than periodic payments. *Id.* at 258. If so, we instructed the Board to project Bailey's total future loss, up to the $60,000 limit, and award Bailey the present value of that amount. *Id.* We further instructed the Board to award Bailey attorney's fees and costs pursuant to AS 23.30.145(a), (b).[3] *Id.* at 259.

On remand, the Board found that it was in the interest of justice to award Bailey a lump sum. The Board further determined that Bailey's total future loss should be calculated over his entire life expectancy, without considering the possibility of retirement.[4] Therefore, Bailey's future wage loss was $60,000 minus all payments made to date. The Board applied an 8.5% interest rate to determine the present value of Bailey's lump sum award. Bailey appealed.

Bailey then asked the Board to award $21,700 in attorney's fees, representing twice his attorney's normal hourly rate. The Board awarded Bailey $5,156.25. Bailey appealed.

The superior court consolidated the appeals and affirmed the decision of the Board, except with respect to the projection of the lump sum award. The superior court remanded the case to the Board with instructions to calculate Bailey's total future loss sustained *before* retirement.

Thereafter, we granted Bailey's petition for review.

### Permanent Partial Disability Benefits

■ Bailey argues that the superior court erred in limiting his recovery of partial permanent disability benefits by considering his probable future retirement. Litwin contends that it is appropriate to limit disability benefits to the employee's work-life, because the benefits are intended to replace the employee's lost earnings.

The workers' compensation act is liberally construed in favor of the employee.[5] *Hood v. Workers' Comp. Bd.,* 574 P.2d 811, 813 (Alaska 1978).[6] Under the act, an em-

---

3. We awarded Bailey $500 in attorney's fees for his appellate work. Bailey moved for reconsideration. We have reserved ruling on the motion pending the outcome of the proceedings on remand.

4. The Board found that Bailey would live at least 16 years, thus receiving weekly payments equal to the statutory maximum. Litwin argued that Bailey's total future loss should be limited to 10 years based on the retirement age of a typical pipefitter.

5. Additionally, we recognize that it is impossible to accurately calculate an employees' future earnings; however, an award must be made.

*Hewing v. Peter Kiewit & Sons,* 586 P.2d 182 (Alaska 1978). The solution is to estimate the future possible earnings "on the strength not only of actual post-injury earnings but of any other available clues." *Id.* at 186.

6. *Contra* ch. 79, § 1(b), SLA 1988 ("The legislature declares that the workers' compensation laws must not be construed by the courts in favor of any party.") (applicable to injuries sustained on or after July 1, 1988, ch. 79, § 48, SLA 1988).

ployee with an unscheduled injury is entitled to collect benefits "during the continuance of the partial disability." AS 23.30.-190(a)(20).[7] By definition, a permanent partial disability will last the rest of the claimant's life;[8] therefore, nothing in the language of AS 23.30.190(a)(20) suggests that a lump sum disability benefit should be calculated based on anything other than the employee's total life expectancy.

Several other jurisdictions have addressed the issue before this court and have reached the same result. *See, e.g., Hilyard Drilling Co. v. Janes*, 462 So.2d 942, 943 (Ala.Cir.App.1985) ("[T]he employer's contention that the claimant's imminent retirement (age) should be considered to reduce an award of compensation is a contention that has been expressly rejected by the courts of this state. While age may be considered in arriving at the *percentage* of a claimant's disability, it may not be considered to reduce the *amount* or *duration* of a disability compensation award.") (citations omitted); *Time, D.C. Freight Lines v. Industrial Comm'n*, 148 Ariz. 117, 713 P.2d 318, 320 (App.1985) (lump sum payment based on lost earning capacity for remainder of claimant's life); *Sulli-*

*van v. Mayo*, 121 So.2d 424, 430 (Fla.1960) (lump sum amount equals present value of all future payments that would accrue during life expectancy of permanently disabled employee); *Sidles Distributing Co. v. Heath*, 366 N.W.2d 1, 2–4 (Iowa 1985) (lump sum award for permanent total disability equals present value of total benefits payable over claimant's life expectancy).[9]

In *Van Voorhis v. Workmen's Compensation Appeals Bd.*, 37 Cal.App.3d 81, 112 Cal.Rptr. 208 (1974), the California Court of Appeal held that retirement of the claimant did not preclude a permanent disability award. The court stated:

> The permanent disability award constitutes a substitute remedy for the remedy which was lost when the Legislature took away the right to sue an employer for damages. If an applicant were denied a permanent disability award simply because he has retired, he would be deprived of his quid pro quo in that legislative bargain.

*Id.* 112 Cal.Rptr. at 214.

Professor Larson also endorses this view:

---

7. At the time of Bailey's 1980 injury, AS 23.30.-190 provided in part:

> (a) In case of disability partial in character but permanent in quality the compensation is 66⅔ percent of the injured employee's average weekly wages ..., and shall be paid to the employee as follows:
>
> ....
>
> (20) in all other cases in this class of disability the compensation is 66⅔ percent of the difference between his average weekly wages and his wage-earning capacity after the injury in the same employment or otherwise, payable during the continuance of the partial disability ...; whenever the board determines that it is in the interest of justice, the liability of the employer for compensation, or any part of it as determined by the board, may be discharged by the payment of a lump sum
>
> ....
>
> (b) Total compensation paid under (a)(20) of this section may not exceed $60,000.

8. "Permanent means lasting the rest of claimant's life. A condition that, according to available medical opinion, will not improve during the claimant's lifetime is deemed a permanent one." 2 A. Larson, *The Law of Workmen's Compensation* § 57.13, at 10–42 (1987) (footnotes omitted).

9. *See also Arizona Public Service Co. v. Industrial Comm'n*, 145 Ariz. 117, 700 P.2d 504, 506–07 (App.1985) (voluntary retirement does not forfeit an employee's right to temporary disability benefits); *Franco v. Indus. Comm'n*, 130 Ariz. 37, 633 P.2d 446, 450 (App.1981) (voluntary retirement does not justify reducing continuing permanent disability benefits); *Stovall v. Williams*, 675 S.W.2d 6, 7 (Ky.App.1984) (total permanent disability payments do not terminate when a claimant lives beyond his actuarial life expectancy; "an award for so long as the claimant is disabled means that the award is for the claimant's occupational life and that occupational life is synonymous with physical life"); *Skrukrud v. Gallatin Laundry Co.*, 171 Mont. 217, 557 P.2d 278, 281–82 (1976) (permanent total disability benefits do not terminate upon retirement); *O'Connell v. New York State Workmen's Compensation Bd.*, 14 A.D.2d 945, 221 N.Y.S.2d 491, 493 (1961) (retirement does not preclude temporary partial disability award to compensate loss of wage-earning capacity which is due to claimant's disability rather than old age); *Krugen v. Beall Pipe & Tank Corp.*, 19 Or.App. 922, 529 P.2d 962, 963 (1974) (permanent total disability benefits do not terminate on retirement).

If permanent disability or death benefits become payable, they are not limited to the period of what would have been claimant's active working life. In other words, if a man becomes totally permanently disabled at age twenty-five, and is awarded benefits for life, they obviously do not stop when he is sixty-five, but extend on into the period of what probably would have been retirement. This being so, if a man is permanently and totally disabled at age sixty, it is not correct to say that his benefits should be based on the theory that his probable future loss of earnings was only five years of earnings. The right to have compensation benefits continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism.

2 A. Larson, *supra* note 8, § 60.21(f).

We realize that in *Fairbanks North Star Borough School District v. Crider*, 736 P.2d 770, 774 (Alaska 1987), we relied on the decision in *Bailey* for the proposition that "AS 23.30.190(a)(20) ... permits a claimant to recover the full $60,000 maximum compensation if the claimant will sustain that amount of loss or more before retirement." However, the inclusion of post-retirement disability benefits was not an issue in *Crider*, because the employee's projected pre-retirement loss exceeded $60,-000. 736 P.2d at 772. Any suggestion to the contrary is dicta, and may be disregarded.

We hold that, in calculating a lump sum award for a permanent partial disability, the employee's total future loss equals the total payments the employee would receive for his normal life expectancy, without considering actual or possible retirement.

**10.** AS 23.30.145 provides:

(a) Fees for legal services rendered in respect to a claim are not valid unless approved by the board, and the fees may not be less than 25 percent on the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 percent of all sums in excess of $1,000 of compensation. When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensa-

*Attorney's Fees*

■ Bailey asserts that the Board abused its discretion by awarding inadequate attorney's fees. Specifically, Bailey asserts that he is entitled to recover $21,-700, representing compensation at twice his attorney's normal hourly rate.

The award of attorney's fees by the Board is governed by AS 23.30.145.[10] This section is intended to insure that attorney's fees are "fully compensatory and reasonable so that competent counsel will be available to furnish legal services to injured workers." *Wise Mechanical Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986). The attorney's fee award is not necessarily limited to the hourly rate times the number of hours expended; instead, the Board may consider the contingent nature of the fee and the likelihood of success on the merits. *Id.* at 972–73, 974–75. Otherwise, claimants might have difficulty finding attorneys willing to prosecute their claims. *Wien Air Alaska v. Arant*, 592 P.2d 352, 365–66 (Alaska 1979). The award of attorney's fees will be upheld unless it is manifestly unreasonable. *See id.* at 366.

In this case, the Board determined that Bailey was not limited to the minimum fee calculated under AS 23.30.145(a), but that he was entitled to additional compensation because of the nature, length and complexity of the services performed. Bailey's actual attorney's fees were $10,850, representing 62 hours at $175 per hour. He requested $21,700. The Board adjusted the hourly rate from $175 to $125.[11] The Board also reduced the number of compensable hours from 62 to 55, because the Board found that Bailey had already been paid for seven hours of work. This finding is supported by the record.

tion awarded; the fees may be allowed only on the amount of compensation controverted and awarded.... In determining the amount of fees the board shall take into consideration the nature, length and complexity of the services performed, transportation charges, and the benefits resulting from the services to the compensation beneficiaries.

**11.** The Board has consistently held that $125 an hour is a reasonable fee.

The Board thus reduced Bailey's claim to $6,875, calculated at $125 per hour times 55 hours. The Board awarded Bailey $5,156.25 based on the nature, length and complexity of the case.

Although the Board considered whether to apply a contingency factor, it decided not to do so. The Board stated:

> The employee contends that Ms. Hansen's study, which showed that of those cases reported between 1982 and October of 1985, employee attorney fees equaled nine percent of compensation paid and employer attorney fees equaled approximately twelve and one-half percent of compensation paid, leads to the inescapable conclusion that employees' attorneys are not paid as much for winning a case as employers' attorneys are paid for losing one. We disagree with this position because we do not find that Ms. Hansen's report has the necessary data and other specifics to support such a conclusion.... Based on this and the other evidence submitted, we find that there is insufficient evidence to support a claim that a contingency factor should be applied to the employee's fee award in this case.

The Board also noted:

> Of the three princip[al] issues before us, Croft's efforts were productive only with respect to the calculation of the lump sum amount. While he was successful in increasing Bailey's [permanent partial disability] limits from $6,000 to $60,000, that was at the Supreme Court level and not here. Further, it should be noted that Croft was unsuccessful with regard to the [temporary total disability] and earning capacity issues. Having considered all of these factors, we reduce Croft's claim for actual attorney fees from $6,875.00 to $5,156.25.

Based on the record, we are unable to conclude that the award of attorney's fees was manifestly unreasonable; therefore, the award is affirmed.

The decision of the superior court is AFFIRMED in part and REVERSED in part.

The decision of the Alaska Workers' Compensation Board is AFFIRMED.