**Sylvester W. POWERS, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.**

**National Geographic Society and The
Hartford Insurance Company,
Intervenors.**

**No. 87–1266.**

District of Columbia Court of Appeals.

Argued Dec. 9, 1988.
Decided Nov. 30, 1989.

Michael V. Kowalski, Washington, D.C., for petitioner.

Herbert O. Reid, Sr., Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Mary L. Wilson, Asst. Corp. Counsel, Washington, D.C., filed a brief, for respondent.

William S. Hopkins, Washington, D.C., for intervenor.

Before NEWMAN, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Powers suffered a back injury at work and could no longer perform all the duties required by his old job with the National Geographic Society. Nevertheless, the Society retained him in a light-duty job at his former wage level. Several months later the employee resigned in order to take a higher-paying job with the U.S. Postal Service. After a few weeks, he quit because the duties of the new job were too rough on his injured back. The Society refused to rehire him. It took Powers about five months to find new employment. Powers filed a claim for workers' compensation benefits covering this five-month period, which was denied by the Director of the Department of Employment Services (DOES). He appeals to this court.

Section 36–301(8) of the D.C. Workers' Compensation Act defines "disability" as incapacity because of injury which "results

in the loss of wages." D.C.Code 36–301(8) (1988). "Wages" in turn are defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury." D.C.Code § 36–301(19) (1988). The Director reasoned that since subsequent to the injury Powers was receiving from the Society the same wages as at the time of the injury, he was suffering no "loss of wages" on account of the injury and hence was not "disabled" within the meaning of the Act.[1] Thus, at the time Powers decided to resign, he occupied the same position as any other employee who voluntarily determines to leave his or her employment. Furthermore, the Act provides that "if an employee voluntarily limits his income ... then his wages after becoming disabled shall be deemed to be the amount he would earn if he did not voluntarily limit his income." D.C.Code § 36–308(3)(V), (5). Powers' departure from his job with the Society, voluntarily entailing a risk of wage diminution as a result of subsequent events, was considered as falling within this general principle.[2]

"Some of the most complex disability questions arise when claimant first gets some kind of employment after his injury and later becomes unemployed. Claimant's subsequent unemployment may be a combination of the physical disadvantage, general economic conditions, the operation of union seniority rules, and perhaps other factors, such as his discharge for misconduct or his voluntary quitting of his job."

2 A. LARSON, WORKMEN'S COMPENSATION LAW § 57.62 (1987). On the precise question presented here, the Director correctly notes that some other jurisdictions have held that there is no right to compensation benefits when an employee resigns, not for reasons related to the injury or disability, but for economic reasons to take a better paying job. Otherwise put, any casual link is thereby severed. *See* LARSON, *supra*, at § 57.64(b); *Bryant v. Industrial Comm'n*, 21 Ariz.App. 356, 519 P.2d 209 (1974); *Pearl v. Builders Iron Foundry*, 73 R.I. 304, 55 A.2d 282 (1947).[3]

"The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history. Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Smith v. Dep't of Employment Services*, 548 A.2d 95, 97 (D.C.1988) (referring to the Workers' Compensation Act) (citations omitted). Pursuant to this standard, the decision of the Director must be

*Affirmed.*

---

1. Petitioner argues that he was in any event disabled at the point he resigned because he could not then compete in the open labor market, but no such construction is necessarily compelled or controlling in a situation involving a voluntary departure as here.

2. This voluntary limitation of income analysis was that applied by the hearing examiner and adopted by the Director in his original decision. On remand from this court for clarification, the Director issued an amended decision emphasizing the statutory definition of "disability." However, the amended decision also "affirmed, adopted, and incorporated by reference herein" the hearing examiner's decision. Of course, as the amended decision observed, the instant case

does not involve "traditional" voluntary limitation of income problems, such as refusal to accept appropriate employment or to undertake vocational rehabilitation.

3. "One difficulty with the rule in the *Pearl* case is that the claimant, having resumed his employment, apparently must cling to the same job forever, for if he leaves it, even an admitted combination of medical disability and inability to get work as a result will never again entitle claimant to an award." LARSON, *supra* at § 57.64(c). Accordingly, some cases have approved a more ameliorated approach. *See Bajdek's Case*, 321 Mass. 325, 73 N.E.2d 253 (1947); *Continental Insurance Co. v. Lamar*, 147 Ga.App. 487, 249 S.E.2d 304 (1978).